# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**RICKIE GREEN**  
**ADC #117055**                                                                                                   **PLAINTIFF**

**V.**                           **NO. 5:19-cv-111-DPM-ERE**

**CRAIG H. WOOLFOLK, JR.,**  
**Sergeant, MSU; STEVEN COOK,**  
**LPN/Nurse**                                                                                                    **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections:

This Recommendation for the dismissal of Mr. Green's claims has been sent to United States District Chief Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

## II.    Background:

Plaintiff Rickie Green, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2*. On March 6, 2020, the Court appointed counsel to represent Mr. Green. *Doc. 87*.[1]

Initially, Mr. Green brought numerous claims against multiple Defendants. The claims and parties have now been narrowed.[2] Mr. Green's remaining claims are that: (1) on April 20, 2018, Defendant Sgt. Craig Woolfolk used excessive force against him by spraying him twice with MK4, a form of pepper spray made from cayenne pepper ("pepper spray"); (2) Sgt. Woolfolk used excessive force against him in retaliation for Mr. Green's use of the grievance procedure two days earlier; and (2) Defendant Steven Cook, a nurse, failed to provide adequate medical care for Mr. Green's injuries from being pepper sprayed.[3]

---

[1] The Court's decision to appoint counsel for Mr. Green was made in the context of a discovery dispute.

[2] The Court previously dismissed Mr. Green's due process and corrective inaction claims against Defendants Ball, Culclager, Kelley, Minor, Lawrence, Minor, Naylor, Reed and Smith based on his failure to state a constitutional claim. *Docs. 69, 71*. In addition, the Court dismissed, for failure to exhaust administrative remedies, Mr. Green's claims that: (1) Defendant Kelley gave Defendant Woolfolk a copy of a grievance; (2) Defendants Ratliff, Daniels, Blunt, and Graydon were deliberately indifferent to his medical needs; (3) Defendant Ratliff forced him to eat in a shower stall; and (4) Defendants Ratliff and Daniels placed him in inhumane conditions. *Id*.

[3] Mr. Green has conceded that he is no longer pursuing any claims against Sgt. Woolfolk based on the events that occurred on April 16, 2018, and that all of his claims are individual capacity claims. *Doc. 144 at p. 9*.
There is some dispute as to whether Mr. Green also abandoned his retaliation claim. In his deposition, Mr. Green initially stated that he was only pursuing an excessive-force claim, but later said he wasn't sure if he was also pursuing a retaliation claim. However, he refused to answer questions about a retaliation claim. *Doc. 134-2 at pp. 5-7*.

Both Defendants have filed separate motions for summary judgment, statements of facts, supporting briefs, and replies. *Docs. 134-136, 138-140, 147, 148*. Mr. Green has responded to both motions. *Docs. 143, 144*. Thus, the issues are fully briefed and ready for disposition.

## III.   Discussion:

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

---

The Court agrees with Sgt. Woolfolk that it would be unfair to allow Mr. Green to pursue a separate retaliation claim based on the allegation that Sgt. Woolfolk called him a snitch. *Doc. 135 at pp. 31-32*. Thus, the Court will address Mr. Green's retaliation claim *solely* as it relates to Defendant Woolfolk's alleged use of force on April 20, 2021 as a retaliatory act.

B.   **Material Facts**

In April of 2018, Mr. Green was housed in a single-man cell in Tucker Max's 5 Barracks, which is classified as "restrictive housing." *Doc. 134-3 at p. 1*.

On April 18, 2018, Mr. Green alleges that he engaged in protected activity by filing a grievance stating that Sgt. Woolfolk tackled[4] him in his cell on April 16, 2018. *Docs. 143-6 at p. 2*. The outcome of that grievance is unclear.[5]

On April 20, 2018, Sgt. Woolfolk was tasked with handing out lunch trays in the barracks where Mr. Green was housed. Sgt. Woolfolk ordered Mr. Green to remove his hand from the trap door of his cell, but Mr. Green refused to comply. To avoid upsetting the other inmates over the delay in getting their meals, Defendant Woolfolk decided to finish handing out the food trays to other inmates before coming back and trying again to close Mr. Green's trap door. *Doc. 134-1 at ¶¶ 17-24*. As a result, the trap door to Mr. Green's cell remained open, which allowed Mr. Green to throw items out of the trap door.

Sgt. Woolfolk offers the following version of the facts. As he attempted to hand out lunch trays to other inmates, Mr. Green threw a bar of soap at him striking

---

[4] Sgt. Woolfolk claims he accidentally tripped on Mr. Green's leg shackles. *Doc. 136.* This disputed fact is immaterial because Mr. Green has conceded his claims stemming from the events that occurred on April 16, 2018. See footnote 2.

[5] The grievances submitted by the parties do not appear to include a copy of the grievance Mr. Green allegedly filed on April 18, although Mr. Green referred to it when he grieved the April 20 use of pepper spray. See *Doc. 143-6 at p. 2*.

him in the head. He then ordered Mr. Green to "Step back!" from the cell door, an order Mr. Green ignored. Sgt. Woolfolk then deployed a single burst of pepper spray. After Sgt. Woolfolk continued to give Mr. Green additional orders, which he also refused, Mr. Green threw coffee on Sgt. Woolfolk, striking him on his right side. That prompted Sgt. Woolfolk to deploy a second burst of pepper spray. Both bursts of pepper spray lasted approximately two seconds. These two uses of pepper spray represent the only force that Sg. Woolfolk used against Mr. Green on April 20. *Id. at ¶¶ 26-35*.

According to Mr. Green, he: (1) could not recall if he had his hand in the trap door immediately before the incident; (2) denied throwing anything at Sgt. Woolfolk before the first use of pepper spray; and (3) admitted throwing coffee on Sgt. Woolfolk between the two uses of pepper spray. *Doc. 134-2 at pp. 15-16*; *Doc. 143-1 at pp. 7, 8, 10*.

A video from that day shows the following:

| | |
|---|---|
| 11:01:35 | Sgt. Woolfolk enters the room with a food cart and continues to work the cart until a white object is thrown from a cell. |
| 11:02:06 | A white object can be seen thrown from the vicinity of Mr. Green's cell and which appears to strike Sgt. Woolfolk in the back of the head.[6] |

---

[6] Although the cell door is obstructed by the second-floor overhang, the object comes from the same cell from which Mr. Green is later extracted.



11:02:07 to 11:02:16   Sgt. Woolfolk approaches Mr. Green's cell, stands in front of it, and discharges a two-second burst of pepper spray.

11:02:17 to 11:02:23   Sgt. Woolfolk walks away from the cell, past the food cart, and out of view.

11:03:21 to 11:04:21   Sgt. Woolfolk returns to the food cart and continues working, in and out of frame.

11:04:22 to 11:04:44   Sgt. Woolfolk and another guard enter the video and appear to be talking.

11:04:45 to 11:05:28   The new guard walks out of frame and Sgt. Woolfolk returns to work the food cart.

11:05:29 to 11:05:35   Sgt. Woolfolk moves the food cart toward the cell next to Mr. Green's and continues working.

11:05:36 to 11:07:05   Mr. Green throws another object across the room. Sgt. Woolfolk moves the cart and walks out of frame.



| | |
|---|---|
| 11:07:06 to 11:07:39 | Sgt. Woolfolk returns to the food cart, moves toward Mr. Green's cell again, and hands out trays to a neighboring cell. |
| 11:07:40 to 11:07:46 | Sgt. Woolfolk hastily returns to his cart and then moves toward Mr. Green's cell with the pepper spray out and stands there. (Presumably this is after Mr. Green threw coffee on Sgt. Woolfolk, but that is not clear in the video.) |
| 11:07:47 to 11:08:00 | Sgt. Woolfolk moves closer to Mr. Green's cell and appears to spray another two-second burst of pepper spray through the trap door. He then walks out of frame. |
| 11:10:15 to 11:10:39 | Sgt. Woolfolk returns to the room with two other guards. He removes the food cart. The guards approach Mr. Green's cell and appear to talk to him. |

*Doc. 137.*

Sgt. Woolfolk is not seen in the video again, which is consistent with his testimony that, after spraying Mr. Green a second time, he went to get assistance. Six minutes after Sgt. Woolfolk leaves the room, several guards remove Mr. Green

7

from his cell and take him to a shower to decontaminate.[7] *Doc. 136 at ¶ 69; Doc. 134-2 at p. 21.* Even before being taken to a shower, Mr. Green had a sink in his cell with running water that he could have used to wash off the pepper spray. *Doc. 134-2 at p. 22.* Mr. Green testified that, after he was sprayed and before being taken to a shower, he made no effort to use the water in his cell to rinse off. *Doc. 140-2 at p. 9.*

While being escorted from the shower to a "behavior control" cell, Mr. Green passed Defendant Steven Cook, a nurse. *Doc. 140 at ¶ 12.* Defendant Cook made notes of the encounter, stating that Mr. Green's eyes were clear and he showed no signs of respiratory distress. *Doc. 140-1 at p. 1.*

According to Mr. Green, while in the "behavior control" cell, his face, chest, and throat continued to burn, and he used water from the sink to attempt to alleviate the burning. *Doc. 2 at pp. 9-10.* Around 3:30 p.m., Mr. Cook looked in on Mr. Green through the cell window. *Doc. 140-2 at pp. 4, 10.* Mr. Green was sitting on either the floor or the bed.[8] *Id. at p. 11.* According to Mr. Green, Mr. Cook did not talk to him during the observation, making Mr. Cook's note stating that he "talked to [Mr. Green] again at Eastern Iso[lation] a "lie." *Docs. 140 at ¶ 18; 140-2 at p. 12.* Mr.

---

[7] Pepper spray is water soluble and leaves no permanent effects. A thorough rinse with soap and water is the recommended decontamination method. *Doc. 134-4 at ¶¶ 21-22.*

[8] Mr. Green does not recall whether he was seated on the floor or the bed. However, he concedes that he did not approach Mr. Cook at the door.

Cook's notes also reflect that Mr. Green "stated his eyes [were] burning" and "no changes [were] noted to the eyes at [that] time." *Doc. 140-1 at p. 1*.

On April 23, 2018, Mr. Green complained that he received no medical treatment after he was pepper sprayed on April 20 and that his throat and chest still hurt, and he was coughing. *Doc. 140 at ¶ 32*. On April 25, 2018, Mr. Green was seen during sick call. His only complaint was chest pain, which he stated was getting better. The nurse noted that his lungs were clear and found no objective findings related to any health issue as a result of his pepper spray exposure. She recommended that he hydrate. *Id. at ¶¶ 32, 34*, 35.

Mr. Green was charged with a disciplinary as a result of the August 20 incident. An independent disciplinary officer reviewed the evidence and found Mr. Green guilty of: (1) aggravated battery on staff; (2) throwing substances on another person; (3) insolence to a staff member; and (4) failure to obey order of staff. *Doc. 134-8 at pp. 1, 4*. As a result of his disciplinary conviction: (1) Mr. Green's class was reduced; (2) his commissary, phone, and visitations privileges were suspended for 60 days; and (3) he was sentenced to 30 days in punitive isolation. *Id*.

Sgt. Woolfolk's conduct on April 20 was the subject of an internal affairs investigation, resulting in the following findings:

> After reviewing the documentation presented, I find that Sgt. Craig Woolfolk used unnecessary force against Inmate Rickie Green in this incident. Inmate Green was in his cell, behind a locked cell door, so there was no immediate physical threat to staff or himself, in order for

>  chemical agent to be dispensed. Sgt. Woolfolk, as Sergeant, should have been able to de-escalate this situation with Inmate Green without having to utilize chemical agent.

*Doc. 143-4 at pp. 2-3.*

### C. Sgt. Woolfolk's Motion for Summary Judgment

#### 1. Qualified Immunity

Sgt. Woolfolk contends that he is entitled to qualified immunity on Mr. Green's remaining individual capacity claims. Qualified immunity shields Sgt. Woolfolk from liability "unless [his] conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Shekleton v. Eichenberger*, 677 F.3d 361, 365 (8th Cir. 2012) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)). In applying this standard, the Eighth Circuit has cautioned that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2001); *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

### 2. Excessive-Force Claim

To prevail on his Eighth Amendment excessive-force claim, Mr. Green must demonstrate that Sgt. Woolfolk used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

The relevant factors that must be considered when making this determination are: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by Sgt. Woolfolk; (4) any efforts made by Sgt. Woolfolk to temper the severity of their forceful response; and (5) the extent of Mr. Green's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

In *Burns v. Eaton*, an inmate who refused to submit to hand restraints when returning from his shower was sprayed with a chemical agent when he threw a shampoo bottle at the officer and spit at him. 752 F.3d 1136, 1140 (8th Cir. 2014). The Court held that the use of force was appropriate and did not violate the Eighth Amendment. The Court specifically noted that, because the inmate refused the officer's orders, the officer "faced a recalcitrant inmate" and the use of force was justified. *Id*. at 1140.

In addition, in *Sylvester v. Kelley*, an inmate alleged that an officer used excessive force when he struck the inmate's hand twice with a trap bar after he failed to remove his hand from the food trap despite two direct orders. No. 5:18cv00120-JM-JTK, ECF No. 57, 2019 WL 3244590 (E.D. Ark. July 2, 2019) (Report and Recommendation), *report and recommendation adopted*, ECF No. 58, 2019 WL 3244106 (E.D. Ark. July 18, 2021). The Court held that the inmate failed to present any evidence that the officer acted sadistically to cause harm, but that he acted only in good faith to maintain or restore discipline. *Id*. at *3.

The Eighth Circuit has recognized that the limited use of chemical agents by a corrections officer, to control recalcitrant inmates, constitutes a "tempered response" when compared to other forms of force; however, additional factors may need to be considered in evaluating whether the officer using the force is entitled to qualified immunity. Those factors include whether: (1) a warning given before the

chemical agents were used; (2) there was a purpose for using the chemical agents, other than to inflict pain; (3) "super-soaker" quantities of the chemical were used; (4) the inmate was not allowed to wash off the chemical for a prolonged period of time; and (5) in addition to using chemical agents, physical force was used. *Burns*, 752 F.3d at 1140; see also *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002).

According to Mr. Green, he was sprayed "without reason." *Doc. 2 at p.9*. Mr. Green also provided Willie Davis' affidavit which supports his position. *Doc. 143-5*.[9] In contrast, Sgt. Woolfolk explains that Mr. Green had refused to allow his trap door to be closed and was throwing soap and batteries from the open trap door, striking Sgt. Woolfolk in the back of the head with soap. *Doc. 136 at ¶ 51*.

The video evidence provided by Sgt. Woolfolk supports his version of the facts, controverts Mr. Green's testimony that Sgt. Woolfolk pepper sprayed him "without reason," and refutes Mr. Green's allegations that he did nothing to prompt Sgt. Woolfolk's initial use of force.

The fact that Mr. Green received a disciplinary for throwing things is further evidence supporting Sgt. Woolfolk's version of the facts. In the video, Sgt. Woolfolk

---

[9] Mr. Davis was housed in the same area as Mr. Green when these events occurred. Mr. Davis's affidavit asserts that Sgt. Woolfolk "sprayed [Mr. Green] with mace for no reason at all." *Doc. 143*-5. However, this assertion is refuted by the video evidence.

13

can be seen on the video standing in front of the cell, apparently giving orders. Sgt. Woolfolk claims that, hoping to close the trap door and restore order, he told Mr. Green to stand down. There is no audio to confirm this, but Sgt. Woolfolk's body language in the video is consistent with his testimony. When Mr. Green did not comply, Sgt. Woolfolk applied a short burst of pepper spray. A few minutes later Sgt. Woolfolk resumed delivering lunches, and Mr. Green threw coffee on him – something Mr. Green does not deny. Sgt. Woolfolk again pepper sprayed Mr. Green. Immediately thereafter, Sgt. Woolfolk leaves the room. Other officers eventually come in and take Mr. Green to the shower to decontaminate. However, it is undisputed that Mr. Green had a sink with running water in his cell that he could have used to wash off the pepper spray.

Thus, Mr. Green's allegation that Sgt. Woolfolk sprayed him with pepper spray "without reason" is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As a result, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Based on the evidence presented, Sgt. Woolfolk used two short bursts of pepper spray in an effort to control Mr. Green, who refused to comply with orders to close the trap door and who threw multiple objects at him. As in *Burns*, "this is not a case where 'a complete absence of a penological purpose' raised 'the

reasonable inference that the officers acted maliciously in an effort to cause harm.'" 752 F.3d at 1140 (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010); accord *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) ("guards are liable only if they are completely unjustified in using force")). Again, as also in *Burns*, here "there [is no] specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive." *Id*.

While Sgt. Woolfolk may have been mistaken in his judgment to administer a chemical agent to an inmate who was confined in a locked cell, his conduct did not violate clearly established law.[10] *Jackson*, 866 F.3d at 975 (citing *Whitley v. Albers*, 476 U.S. 312, 322 ("If the evidence shows only 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury'")). It was not clearly established, as of April 20, 2018, that prison guards were forbidden to use a short burst of pepper spray against an inmate who, even though behind bars, was throwing objects at the guard through the cell's open trap door. As a result, Sgt. Woolfolk is entitled to qualified immunity on Mr. Green's excessive-force claim.

---

[10] To the extent that Mr. Green claims that Sgt. Woolfolk's violation of ADC policy proves that he acted with excessive force against him, the Court disagrees. The law is well settled that failing to follow prison policies or procedures is not conduct that rises to the level of a constitutional claim. *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

### 3. Retaliation Claim

To the extent that Mr. Green claims that Sgt. Woolfolk used excessive force against him in retaliation for Mr. Green's use of the grievance procedure, that claim also fails as a matter of law.

To prove retaliation, Mr. Green must present evidence that: (1) he engaged in constitutionally protected activity; (2) Sgt. Woolfolk took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was a motivating factor for the adverse action. *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); *Cornell v. Woods*, 69 F.3d 1383, 1387-88 (8th Cir. 1995) (internal citation omitted) (inmate "must show that impermissible retaliation was the actual motivating factor for his transfer"). Moreover, allegations of retaliation must be more than speculative and conclusory. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

In this case, Mr. Green alleges that on April 16, 2018, Sgt. Woolfolk "tackled" him and called him a "snitch." Two days later, Mr. Green filed a grievance regarding Sgt. Woolfolk's conduct. Two days after that, Mr. Green complains that Sgt. Woolfolk used excessive force against him.

Mr. Green has failed to present any evidence that retaliation was a "motivating factor" for Sgt. Woolfolk's conduct on April 20, 2018. In contrast, as explained

16

above, and as evidenced by the video recording of the incident at issue, Sgt. Woolfolk used pepper spray in reaction to Mr. Green's defiant behavior. Mr. Green has failed to provide any evidence, other than his own speculation, that Sgt. Woolfolk's use of pepper spray was motivated, at least in part, by Mr. Green's use of the grievance procedure two days earlier. See *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993) (stating that, to succeed on a retaliatory-discipline claim, an inmate must prove that, but for an unconstitutional retaliatory motive, the discipline would not have occurred); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (inmate failed to prove retaliation claim when "he failed to show that *but for* his assertions of his constitutional rights, he would not have been transferred") (emphasis added). Without any evidence of retaliatory motive, Mr. Green has failed to prove that Sgt. Woolfolk violated his First Amendment rights. As a result, Sgt. Woolfolk also is entitled to qualified immunity on Mr. Green's remaining retaliation claim.

### D. Mr. Cook's Motion for Summary Judgment

Mr. Green asserts that Mr. Cook was deliberately indifferent to his medical needs. However, this assertion is contradicted by Mr. Green's own version of events.

After Sgt. Woolfolk pepper sprayed him, Mr. Green was taken immediately to the shower and then placed in a "behavior control" cell. While there, Mr. Green alleges that his face, chest, and throat continued to burn, and he used water from the sink in his cell to attempt to alleviate the burning. Around 3:30 p.m., Mr. Cook

17

looked in on Mr. Green through the cell window, but according to Mr. Green, Mr. Cook did not talk to him during the observation. Mr. Green asserts that this means Mr. Cook's note indicating that he "talked to [Mr. Green] again at Eastern Iso[lation]" is a "lie." Defendant Cook's notes indicate that Mr. Green "stated his eyes [were] burning" and there were "no changes noted to the eyes at [that] time." *Doc. 140-1 at 1*.

To prove his inadequate medical care claim against Mr. Cook, Mr. Green must produce evidence showing that: (1) he had an objectively serious need for medical care after being pepper sprayed; and (2) Mr. Cook knew of, but disregarded, that serious medical need. See *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

According to Mr. Green, he "didn't have no conversation with Cook . . . [who] looked in [Mr. Green's] cell and left." *Doc. 140-2 at p. 4*. Taking this statement as true, Mr. Cook would have been unaware that Mr. Green was continuing to suffer the effects of being pepper sprayed. Additionally, Mr. Green admits that he did not ask for additional medical care at that time. *Id*. Since Mr. Green admittedly did not request additional treatment and was not in obvious pain, Mr. Cook had no knowledge or basis for inferring that Mr. Green was suffering. Finally, there was a sink in the cell that Mr. Green could have used to continue to mitigate the burning.[11]

---

[11] Mr. Green does not dispute that water is the best way to decontaminate after being pepper sprayed.

18

If that did not work, Mr. Green could have submitted a sick-call request, which he eventually did.

Additionally, Mr. Cook attaches to his motion the declaration of Chris Horan, M.D., the Regional Medical Director for Wellpath. *Doc. 140-5 at p.1.* Dr. Horan testifies that "there is nothing in the records" to indicate "that the application of pepper spray created a serious medical need or that Mr. Green required any specific medical care or treatment other than decontamination with water." *Doc. 14-5 at pp. 1-2.* Mr. Green has failed to come forward with any evidence controverting Dr. Horan's testimony.

Mr. Green seems focused on the fact that Mr. Cook's notes suggest that he talked to Mr. Green during his rounds when they actually did not speak at all. This is not a material factual dispute. Accepting Mr. Green's contention that Mr. Cook "lied" in his notes, the evidence remains insufficient to allow a reasonable factfinder to conclude either that: (1) Mr. Cook, during his observation of Mr. Green, knew or should have known that Mr. Green had a serious medical injury requiring care; or (2) acted with deliberate indifference by refusing to treat him.

IV.     **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1.     Sgt. Woolfolk's motion for summary judgment *(Doc. 134)* be GRANTED, judgment be entered for Sgt. Craig Woolfolk, and Mr. Green's

19

remaining claims for excessive force and retaliation against Sgt. Woolfolk be DISMISSED, WITH PREJUDICE.

2. Steven Cook's motion for summary judgment *(Doc. 138)* be GRANTED, judgment be entered for Mr. Cook, and Mr. Green's inadequate medical care claim against Mr. Cook be DISMISSED, WITH PREJUDICE.

DATED this 8th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE